**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HILLSPRING HEALTH CARE                      Civil Action No. 1:17-cv-35
CENTER, LLC,

      Plaintiff,                                          Bowman, M.J

   vs.

CYNTHIA C. DUNGEY, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This civil matter is before the Court on the Motion to Dismiss of Defendants
Cynthia C. Dungey, Director of the Ohio Department of Job and Family Services
("ODJFS"), and Barbara Sears, Director of the Ohio Department of Medicaid ("ODM")
(collectively, "Defendants"). (Doc. 10). Plaintiff Hillspring Health Care Center, LLC
("Plaintiff" or "Hillspring") has filed a response in opposition (Doc. 11), and Defendants
have filed a reply (Doc. 14). The parties also have submitted supplemental authority in
support of these briefings. (Docs. 17, 19, 21, 23, and 29). For the reasons that follow,
Defendant's Motion to Dismiss is GRANTED.

I.     **Background and Factual Allegations**

This case centers on the denial of Medicaid benefits to Barbara Graham
("Graham"), now deceased, based upon a finding that her life insurance policy was a
countable resource that placed her above the financial threshold for eligibility.

Graham was an elderly woman who suffered from numerous medical conditions
that required 24-hour care and assistance. (Doc. 3, PageId 23). She was admitted to

Hillspring, an Ohio skilled nursing facility, on October 5, 2013. (*Id.*, PageId 22-23). Upon her admission, Graham executed an Admission Agreement and Assignment with Hillspring that is alleged to make Hillspring an intended third-party beneficiary of Graham's Medicaid benefits. (*Id.*, PageId 23). On February 3, 2014, Graham submitted an application for a Medicaid Nursing Home Vendor Payment. (*Id.*). Graham owned a $10,000 life insurance policy that is central to the issues raised herein. (*Id.*). Graham is alleged to have lacked the mental and physical capacity to act on her own behalf to convert that life insurance policy to a cash value. (*Id.*).

At the time of Plaintiff's Medicaid application, Ohio applicants with countable resources in excess of $1,500 were ineligible for benefits for nursing home services. Ohio Admin. Code § 5160:1-3-05(B)(11)(a), (C) (eff. 10-1-13).[1] "Resources" included, *inter alia*, life insurance policies that "an individual . . . has an ownership interest in, has the legal ability to access in order to convert to cash (if not already cash), and is not legally prohibited from using for support and maintenance." Ohio Admin. Code § 5160:1-3-05(B)(8), (B)(10). Such policies could not be a resource, however, "if the individual lack[ed] the legal ability to access funds for spending or to convert noncash property into cash." Ohio Admin. Code § 5160:1-3-05(B)(10)(a).[2] "Countable resources" meant those resources remaining after all exemptions were applied. Ohio Admin. Code § 5160:1-3-05. A life insurance policy generally was not exempt if the total cash surrender value for an individual exceeded $1,500. Ohio Admin. Code §

---

[1] That provision has since been repealed and replaced by Ohio Admin. Code § 5160:1-3-05.1 (eff. 8-1-16).

[2] Ohio Admin. Code § 5160:1-3-05(C)(7)(a) also provided: "If the applicant is unable to access or liquidate property due to a legal impediment or due to conduct of another person, the administrative agency must refer the individual to legal aid services or the prosecuting attorney's office to determine if they can assist in making the resource available."

5160:1-3-30.[3]   However, a life insurance policy could be excluded if the Medicaid applicant or recipient would be unable to surrender the policy for cash value due to a lack of required consent from another person or if another person would be entitled to receive all of the proceeds of the policy.  Ohio Admin. Code § 5160:1-3-05(E).

Graham passed away on February 14, 2014.  (Doc. 3, PageId 23).  Defendants denied payment under Medicaid on April 22, 2014 upon a finding that Graham was over-resources.  (*Id.*).

After denial of Graham's Medicaid application, Plaintiff requested a state hearing by ODJFS to challenge the determination that Graham's life insurance policy was a countable resource.  (Doc. 10, PageId 97-102).[4]   According to the state hearing decision, Plaintiff's position was "that the policy had been assigned to the funeral home and was therefore an exempt resource."  (*Id.*, PageId 99).  The hearing officer concluded that the evidence submitted did not demonstrate that the life insurance policy was irrevocably assigned to the funeral home.  (*Id.*, PageId 99-100).  The hearing officer therefore deemed the life insurance policy a countable resource, and affirmed the denial of Graham's Medicaid application.  (*Id.*, PageId 100).

Plaintiff appealed the state hearing officer's decision to the ODJFS's Administrative Appeal Section.  (Doc. 10, PageId 103-05).  In that appeal, Plaintiff argued "that there was no evidence that [Graham's] son was her power of attorney and

---

[3] Effective October 2, 2014, this provision was repealed and replaced by Ohio Admin. Code § 5160:1-3-05.12.  On August 1, 2016, these rules were rescinded and new rules were promulgated in Ohio Admin. Code § 5160:1-3-05.12.  Nonetheless, the rules continue to provide that a life insurance policy with a cash surrender value in excess of $1,500 generally will be considered a countable resource.

[4] The Court may take judicial notice of the decisions of administrative agencies.  *Int'l Broth. of Teamsters v. Zantop Air Transp. Corp.,* 394 F.2d 36, 40 (6th Cir. 1968) ("[A] Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority.");  *Dweidary v. City of Cincinnati,* No. 1:13-cv-911, 2014 WL 5588796, at *2 n.4 (S.D. Ohio Nov. 3, 2014) (taking judicial notice of administrative determinations).

could access the value of the life insurance policy" and that "even if [Graham's] son was her financial power of attorney, the son could not immediately liquidate the insurance policy to access the money." (Doc. 10, PageId 104). The appeal officer concluded that the "rule provides that [a] life insurance policy is considered an available resource and there is no provision for the amount of time it takes to liquidate the policy." (*Id.*). Given that the value of the life insurance policy exceeded the Medicaid resource limit and was not otherwise exempt, the appeal officer affirmed the decision of the state hearing officer. (*Id.*).

Plaintiff then appealed the decision of the administrative tribunal to the Court of Common Pleas for Warren County, Ohio. (Doc. 10, PageId 106-15).[5] In that appeal, Plaintiff argued "there is insufficient evidence to conclude that Graham had the ability to convert the life insurance policy to cash, either by herself or through an attorney-in-fact; and Graham was in no mental or physical state to complete such a transaction." (*Id.*, PageId 108). The Magistrate determined that "[n]othing in the record indicates that Graham had an irrevocable preneed funeral contract" or that "Graham was incompetent, or otherwise unable to access the life insurance policy to liquidate it." (Doc. 10, PageId 109). The Magistrate further noted that Plaintiff was not arguing that Graham was incompetent when she signed the January 18, 2014 designation of authorized representation. (*Id.*). As "[t]he only thing that is clearly established by the record is that Graham, at her death, possessed a life insurance policy with a cash surrender value of

---

[5] The Court may take judicial notice of the prior state court proceedings. *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)) ("Federal courts may take judicial notice of proceedings in other courts of record.") (internal quotations omitted); *Lyons v. Stovall*, 188 F.3d 327, 333 n. 3 (6th Cir. 1999) (taking judicial notice of state appellate briefs filed by petitioner).

$6,460.65, a countable resource in excess of $1,500[,]" the Magistrate affirmed the denial of Plaintiff's Medicaid application because she was ineligible for the requested benefits. (*Id.*, PageId 109-10). That decision was affirmed by the Common Pleas Court Judge over the objections of Plaintiff on August 16, 2016. (*Id.*, PageId 111-15).

On January 13, 2017, Plaintiff filed the original Complaint in this Court. (Doc. 1). On January 26, 2017, Plaintiff filed its Amended Complaint, asserting seven counts for relief. (Doc. 3). In Count One, Plaintiff requests a declaratory judgment on several grounds. (*Id.*, PageId 27-30). In Count Two, Plaintiff alleges Defendants violated the Federal Medicaid Act's medical assistance and nursing facility services mandates, 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(4)(A), for which it seeks relief under 42 U.S.C. § 1983. (*Id.*, PageId 30-31). In Count Three, Plaintiff alleges Defendants violated the Federal Medicaid Act's "reasonable promptness" requirement under 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930, for which it seeks relief under 42 U.S.C. § 1983. (*Id.*, PageId 31). In Count Four, Plaintiff alleges Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.*, by failing to afford Graham public benefits to which she is entitled and by failing to grant her Medicaid benefits as a reasonable accommodation. (*Id.*, PageId 32). In Count Five, Plaintiff alleges Defendants violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, by denying Medicaid benefits to Graham. (*Id.*, PageId 32-33). In Count Six, Plaintiff alleges Defendants violated Graham's due process and equal protection rights for which it seeks relief under 42 U.S.C. § 1983. (*Id.*, PageId 33-34). Finally, in Count Seven, Plaintiff requests injunctive relief that requires Defendants to issue payment of Graham's approved Medicaid benefits. (*Id.*, PageId 34).

## II. Standards of Review

Defendants have moved to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Subject matter jurisdiction under Rule 12(b)(1)

Motions to dismiss under Rule 12(b)(1) can assert either facial attacks or factual attacks on a court's subject matter jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Where a facial attack on the subject matter jurisdiction alleged by the complaint is made, the moving party merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Id.* The court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

A motion to dismiss based on subject matter jurisdiction generally must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 592 (S.D. Ohio 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)) (explaining that a Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction).

### B. Failure to state a claim under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the claims. The Court is required to construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true. *Lewis v. ACB Business Servs.*, 135 F.3d 389, 405 (6th Cir. 1998). A court, however,

will not accept conclusions of law or unwarranted inferences that are presented as factual allegations. *Id.* A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Id.* at 406. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Factual allegations therefore "must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

## III.   Analysis

Defendants contend that dismissal of Plaintiff's Amended Complaint is appropriate on multiple grounds under both Rule 12(b)(1) and Rule 12(b)(6). In the interests of judicial economy, the Court will not reach the arguments on the merits because dismissal of Plaintiff's Amended Complaint is appropriate on multiple procedural grounds.

### A.  Plaintiff's claims are moot.

Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction. *Kentucky v. United States*, 759 F.3d 588, 595 (6th Cir. 2014). "When—for whatever reason—the dispute discontinues or we are no longer able to grant meaningful relief to the prevailing party, the action is moot, and we must dismiss for lack of jurisdiction." *Id.* (quoting *United States v. Blewett*, 746 F.3d 647, 661 (6th Cir. 2013)) (internal quotations

omitted).  "Ordinarily, one would expect that the death of a plaintiff requires dismissal of a case for mootness, since that plaintiff is no longer in a position to have [her] injury redressed by the courts."  *Allen v. Mansour*, 928 F.2d 404, 1991 WL 37832, at *1 (6th Cir. 1991) (unpublished table decision).  "Mootness applies also to situations where, as here, the plaintiff seeks a declaratory judgment invalidating or modifying a state policy, since death prevents the plaintiff from benefitting in any way from the requested relief."  *Allen*, 1991 WL 37832, at *1 (citing *Rhodes v. Stewart*, 488 U.S. 1 (1988)).  It further applies to declaratory and injunctive relief regarding an individual's eligibility for Medicaid.  *Immel v. Lumpkin*, 408 F. App'x 920, 921 (6th Cir. 2010) (holding that the plaintiff "sought only declaratory and injunctive relief regarding her eligibility for Medicaid, and therefore, upon her death, she no longer has a 'legally cognizable interest in the outcome.'") (quoting *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005)); *see also Pecha-Weber v. Lake*, 700 F. App'x 840, 842 (10th Cir. July 25, 2017) ("This case presents the question of whether a plaintiff's death moots his request for an injunction ordering certain officials of the State of Oklahoma to determine him eligible for Medicaid benefits.  We answer yes.  The claim for injunctive—that is, prospective—relief is moot because there is no concrete threat of a continuing or repeated injury to the plaintiff-appellant . . . because he is dead.  Any harm to [the plaintiff-appellant] lies squarely in the past.").  Nonetheless, a case will not be considered moot if the challenged activity is capable of repetition, yet evading review.  *Kentucky*, 759 F.3d at 595.  This exception applies only where the challenged action is in its duration too short to be fully litigated prior to expiration or cessation, and there is a

reasonable expectation that the same complaining party will be subject to the same action again. *Id.*

Here, the Court agrees with Defendants that the claims asserted by Plaintiff are moot. Graham died on February 14, 2014. She therefore is unable to proceed in this Court on her own behalf to assert her claims either for past or future injuries. Further, the requests for declaratory and injunctive relief seek to invalidate or modify a state policy on Medicaid eligibility determinations relating to a life insurance policy and seek a determination that Graham is eligible for Medicaid benefits.[6] Given that she is deceased, Graham cannot benefit from the requested declaratory or injunctive relief and there is no threat of a continuing or repeated injury to Graham. Graham therefore lacks a legally cognizable interest in the outcome.[7]

Plaintiff claims, however, that it continues to have a legally cognizable interest in the outcome as the authorized representative of Graham, even though Graham is deceased. As an authorized representative, the permissible scope of Plaintiff's representation of Graham is governed by federal and state regulations. For the reasons discussed below, the Court finds that those regulations do not extend to Plaintiff the authority to maintain a federal lawsuit on Graham's behalf after her death and after a final decision on Graham's Medicaid eligibility has been made.

_____

[6] In particular, Plaintiff seeks a declaratory judgment "requiring Defendants to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act," requests the Court to enjoin "Defendants from subjecting [Graham] to practices that violate her rights under the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act," and requests the Court to order injunctive relief "requiring the Defendants to arrange for medical assistance and nursing services to [Graham]" and to "issue payment of [Graham's] approved Medicaid benefits." (Doc. 3, PageId 34-35).
[7] As Graham's estate is not a party to this lawsuit, the Court need not opine on how or if its inclusion would alter the mootness analysis.

Plaintiff relies on the definition of "applicant" in the federal regulations to suggest it may proceed in this federal lawsuit on behalf of Graham after her death. Under 42 C.F.R. § 400.203, "applicant" means:

> an individual whose written application for Medicaid has been submitted to the agency determining Medicaid eligibility, but has not received final action. This includes an individual (who need not be alive at the time of application) whose application is submitted through a representative or a person acting responsibly for the individual.

This definition reflects only that a representative may submit an application for benefits to the agency on behalf of an individual after her death. The individual remains the "applicant." Further, it does not provide that an entity appointed as an authorized representative is legally entitled to serve as the representative of the individual in any and all matters, including federal court proceedings, after the individual's death or in contravention to threshold constitutional requirements. In fact, the definition places limits on any purported authority of an authorized representative by indicating that an individual remains an "applicant" only until her application has received "final action." Under Ohio law, the administrative appeal decision is the "final decision" that is binding on the agency unless it is reversed or modified by the state court on appeal. Ohio Rev. Code § 5101.35 ("An administrative appeal decision is the final decision of the department and . . . is binding upon the department and agency, unless it is reversed or modified on appeal to the court of common pleas."). As Graham's application proceeded through both the administrative and state court of common pleas appeal process, she received a final action on her application as contemplated by the regulation. Therefore, Graham is no longer an applicant under that definition, which

terminates any authority the authorized representative arguably may have under that definition to proceed on Graham's behalf following her death.[8]

Similarly, Plaintiff's reliance on provisions relating to "authorized representatives" under federal and Ohio law does not persuade the Court that Plaintiff has the authority to proceed on Graham's behalf in this lawsuit after Graham's death.  Under 42 C.F.R. § 435.923, the following applies to authorized representatives:

> (a) The agency must permit applicants and beneficiaries to designate an individual or organization to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency. Such a designation must be in accordance with paragraph (f) of this section, including the applicant's signature, and must be permitted at the time of application and at other times.
>
> (2) Authority for an individual or entity to act on behalf of an applicant or beneficiary accorded under state law, including but not limited to, a court order establishing legal guardianship or a power of attorney, must be treated as a written designation by the applicant or beneficiary of authorized representation.
>
> (b) Applicants and beneficiaries may authorize their representatives to—
>
> (1) Sign an application on the applicant's behalf;
>
> (2) Complete and submit a renewal form;
>
> (3) Receive copies of the applicant or beneficiary's notices and other communications from the agency;
>
> (4) Act on behalf of the applicant or beneficiary in all other matters with the agency.
>
> (c) The power to act as an authorized representative is valid until the applicant or beneficiary modifies the authorization or notifies the agency that the representative is no longer authorized to act on his or her behalf, or the authorized representative informs the agency that he or she no longer is acting in such capacity, or there is a change in the legal authority upon which the individual or organization's authority was based.

---

[8] Any other interpretation would allow every individual who is denied Medicaid benefits through the administrative and state court process to forever remain an "applicant."

Although Plaintiff claims that the clause allowing it to "[a]ct on behalf of the applicant or beneficiary in all other matters with the agency" is sufficiently broad to authorize the filing of this federal lawsuit, that clause plainly limits the authorized representative's authority to actions on behalf of the "applicant."[9]  As previously discussed, Graham was no longer an "applicant" as that term is defined in the federal regulations when this lawsuit was filed.  That clause therefore cannot authorize Plaintiff to file this lawsuit on Graham's behalf.

Likewise, the Ohio regulation provides that the authorized representative only "stands in place of the individual" with respect to the individual's responsibilities under the state Medicaid provisions.  Ohio Admin. Code § 5160:1-1-01(B)(6).[10]  It does not indicate that the authorization applies for matters beyond the scope of the state Medicaid processes nor does it expressly extend to representation of the individual after her death.  To the extent that representation after death is permitted, it is permitted only by the definition of "applicant" in 42 C.F.R. § 435.923, which is no longer applicable to Graham.

In an analogous situation where a person was given power of attorney for a Medicaid applicant, which would make that person an authorized representative under 42 C.F.R. § 435.923, the power of attorney has been held to lapse upon the individual's death such that any claims asserted by the attorney-in-fact in the state appellate court were moot.  *Santa v. Ohio Dep't of Human Servs.*, 136 Ohio App. 3d 190, 194 (Ohio App. Ct. Jan. 31, 2000) (holding that power of attorney lapsed upon death of individual

---

[9] As no argument is made with respect to authorized representation of a beneficiary, the Court need not address that aspect of the regulation.

[10] The former Ohio regulation pertaining to authorized representatives is in accord.  Ohio Admin. Code § 5160:1-1-55.1.

who was denied Medicaid benefits and that the person who had held power of attorney was not proper party to maintain appeal of common pleas court's decision affirming the denial of Medicaid benefits to applicant). In that case, the proper representative of the deceased individual was the administrator of the estate, not the authorized representative. *Id.*; *see also Latimore v. Hartford Life & Acc. Ins. Co.*, No. 2011CA00227, 2012 WL 382932, at *4 (Ohio App. Ct. Jan. 30, 2012) (concluding that an individual's "authority under the power of attorney lapsed upon [the insured's] death" and that she "lacks legal authority to represent [the insured]" in the judicial proceeding where she was not the executor of the estate). The Eastern District of Kentucky recently has applied similar reasoning to circumstances that are virtually identical to those in this case. *Diversicare v. Glisson*, No. 16-141, 2017 WL 4873510, at *4 (E.D. Ky. Oct. 27, 2017). Specifically, the district court determined that a nursing home serving as an authorized representative could not continue to represent that resident after her death in a federal lawsuit because "only an administrator of [the deceased's] estate could bring a federal claim on her behalf[.]" *Id.* These holdings reflect that an authorized representative does not have unbridled authority to continue representing an individual after her death and after a final decision on her Medicaid eligibility in any and all court proceedings in which it may have some ongoing interest.[11]

None of the cases on which Plaintiff relies undermine the above conclusion. First, Plaintiff contends that *Doctors Nursing & Rehabilitation Center v. Norwood*, Case No. 1:16-cv-9837, 2017 WL 2461544 (N.D. Ill. June 7, 2017), demonstrates that an authorized representative has the authority to pursue federal litigation on behalf of a

---

[11] Consistently, 42 C.F.R. § 435.923(c) places limits on authorized representation by recognizing that the power to act can be invalidated by a change in the legal authority upon which the individual or organization's authority originally was based.

Medicaid recipient pursuant to 42 C.F.R. § 435.923. (Doc. 21, PageId 211). That case, however, is distinguishable from the present case. In *Norwood*, the district court determined that the authorized representative could pursue litigation in federal court to secure Medicaid benefits for individuals who still were awaiting Medicaid eligibility determinations and individuals who received Medicaid approval but were still awaiting benefits. *Id.* at *4. Unlike the individuals who were represented in *Norwood*, however, Graham is deceased and already has been denied Medicaid eligibility benefits in a final administrative decision affirmed by the state court of common pleas. *Norwood* thus does not extend the scope of authorized representation to the facts of this case.

Plaintiff also relies on *Tiggs v. Ohio Department of Job & Family Services*, Case No. CV-17-874398 (Ohio Ct. C.P. July 11, 2017), for the proposition that an authorized representative has the authority to pursue federal litigation on behalf of a Medicaid recipient. (Doc. 23, PageId 236). Similar to *Norwood*, *Tiggs* does not extend the scope of authorized representation to this case. In *Tiggs*, the court of common pleas relied on *Norwood* to support a finding that the authorized representative could pursue an appeal of a Medicaid eligibility determination to that court to receive a "final determination" as to the appellant's benefits. (Doc. 23-1, PageId 245). *Tiggs*, however, does not stand for the proposition that an authorized representative may assert vicarious claims in federal court proceedings on behalf of a deceased individual even *after* a final determination is made by the state court of common pleas.

In the alternative, Plaintiff argues that it has associational standing to assert claims on behalf of its residents. But Plaintiff did not seek to proceed as a representative of its members in the Amended Complaint. (*See generally* Doc. 3).

Instead, the Amended Complaint demonstrates that Plaintiff is proceeding as an authorized representative of Graham only with the claims being personal to Graham and relating entirely to the denial of Graham's Medicaid eligibility. (*See id.*). Its argument on associational standing therefore lacks merit.[12]

For these reasons, the undersigned finds that Plaintiff's claims must be dismissed as moot.

### B. Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

Even if Plaintiff's claims were not moot, they would be barred by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction to review final adjudications of a state court. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004). The *Rooker-Feldman* doctrine is confined to:

> cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

---

[12] Even if Plaintiff had sought to proceed based on associational membership (which it did not), the Court is not persuaded by the non-binding decision in *Westminster Nursing Ctr. v. Cohen*, Case No. 5:17-cv-96 (E.D.N.C. Nov. 22, 2017), on which Plaintiff relies. (Doc. 29-1). Unlike in that case, Plaintiff has not demonstrated that one of its members has standing in his or her own right to pursue the claims. Nor has it demonstrated that it is organized for purposes germane to the subject of these claims, which, in broad strokes, concerns the Medicaid eligibility of an individual with a life insurance policy that allegedly could not be liquidated. Plaintiff is not a voluntary trade organization or association formed to advocate for individuals seeking Medicaid benefits; rather, it is a limited liability company that operates a skilled nursing facility at which it has residents. (Doc. 3, PageId 21). Plaintiff maintains a business relationship with those residents. This relationship is insufficient for purposes of associational standing. *Diversicare v. Glisson*, No. 16-141, 2017 WL 4873510, at *4 (E.D. Ky. Oct. 27, 2017) (finding no associational standing for a for-profit nursing home that had residents akin to customers and that was not formed to advocate for residents); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000) (denying associational standing to health maintenance organizations (HMOs) because its members did not have indicia of membership and HMO instead maintained a business-consumer relationship with those members); *Allstate Ins. Co. v. City of Chicago*, No. 02C5456, 2003 WL 1877570, at *4 (N.D. Ill. Apr. 14, 2003) (finding a business-consumer relationship between the insurance company and its insureds did not show sufficiently collective views to confer associational standing on insurance company). Plaintiff's mere interest in the subject does not confer associational standing upon it.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). That means that a claim is barred by the doctrine when the state court judgment is the source of the alleged injury. *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006). "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Lawrence v. Welch*, 531 F.3d 364, 368-69 (6th Cir. 2008). While "these independent claims may deny a legal conclusion of the state court . . . this fact does not lead to a divestment of subject matter jurisdiction in the federal courts." *McCormick*, 451 F.3d at 392. However, even where an independent claim is made, the state proceedings may foreclose the federal claim under the doctrine of *res judicata*. *Id.* at 392-93.

Here, the Court finds that Plaintiff's claims assert injuries caused by the state-court judgment. Plaintiff lost its case in state court when the state court affirmed the denial of Graham's eligibility for Medicaid benefits, finding that the life insurance policy was a countable resource and stating that "nothing in the record indicates that Graham was incompetent, or otherwise unable to access the life insurance policy to liquidate it." (Doc. 10, PageId 109). After that state-court loss, Plaintiff filed its lawsuit in this Court in which it complains that "both under Federal law and Ohio law, the life insurance policy at issue is not a resource and that due to Plaintiff's incapacity and disability, she was not able to liquidate any insurance policy." (Doc. 11, PageId 133-34). In other words, Plaintiff invites the Court to directly reject the state-court's judgment denying Medicaid eligibility based on whether the life insurance policy is a countable resource, whether Graham was incompetent, and whether Graham had the ability to otherwise liquidate the life insurance policy. The Court is unable to find in favor of Plaintiff on any claims

16

unless that judgment of the state court is overturned.  These are precisely the type of claims that are barred by *Rooker-Feldman*.[13]

The declaratory and injunctive relief sought by Plaintiff further demonstrates that the alleged source of injury is the state-court judgment.  Plaintiff requests that the Court declare unlawful Defendants' denial of Medicaid benefits to Graham, and order Defendants to comply with the Medicaid Act, the ADA, and the Rehabilitation Act.  But, as explained above, the Court cannot do so without overturning the state-court judgment that affirms Defendants' denial of Medicaid benefits to Graham.  Plaintiff also requests that the Court require Defendants to arrange for medical assistance and nursing facility services for Graham and to issue payment of Graham's past Medicaid benefits.  In substance, these requests do nothing more than seek relief from the state-court judgment under which Defendants currently have no obligation to arrange for services for Graham or to issue payment for Graham's past Medicaid benefits.

For these reasons, these claims are not the type of "independent claims" that may generally deny a legal conclusion of the state court but do not seek relief of overturning or setting aside the state court ruling. *See McCormick*, 451 F.3d at 392 (finding claims challenging the general constitutionality of a state statute and actions of third parties in relation to the state court action were independent claims).  The mere fact that Plaintiff couches its claims in federal law and constitutional terms does not transform them into independent claims that avoid the *Rooker-Feldman* bar.[14]

_____

[13] Plaintiff also complains that some of the alleged injuries are ongoing, but it fails to allege any separate wrongful conduct by Defendants since the original denial of Graham's Medicaid application.  As such, the only possible source of ongoing injury is the state-court judgment affirming the denial of Medicaid benefits to Graham.

[14] But even if these claims could be considered independent, they are barred on the other grounds discussed herein.

17

**C. Any claims not barred by the *Rooker-Feldman* doctrine are barred by *res judicata*.**

The purpose of res judicata "is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). This Court gives "'the same preclusive effect, under the doctrine[] of res judicata . . . to state court judgments that those judgments would receive in courts of the rendering state.'" *ABS Indus., Inc. v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 195 F.3d 579, 593 (6th Cir. 1999)). The Court therefore must look "to the state's law to assess the preclusive effect it would attach to that judgment." *Id.*

"Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist.,* 422 F. App'x 497, 500 (6th Cir. 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St.3d 59 (2007)). In this case, it is evident that claim preclusion is the asserted basis for dismissal.

For claim preclusion to apply, the moving party must show: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action. *Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir.1997) (citations omitted). When each of these elements is shown to exist, the second action must be dismissed. *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995). Here, the parties do not raise a

substantive dispute as to the first, second, or fourth elements. The key issue is whether the claims asserted in this case could have been litigated in the administrative hearings and the state court appeal.

Upon careful review, the Court finds that any claims not otherwise barred by the *Rooker-Feldman* doctrine are barred by *res judicata*. In affirming the denial of Graham's Medicaid eligibility, the state court made specific findings that Graham's life insurance policy was a countable resource, that her resources exceed $1,500, and that no evidence supported the contention that Graham was incompetent or otherwise unable to access her insurance policy. Plaintiff now is claiming that Defendants violated and continue to violate federal statutes and constitutional provisions by including Graham's life insurance policy as a countable resource when she was incompetent or otherwise unable to access that policy to liquidate it. These claims are premised upon the same facts and circumstances as the state court action. The only difference is the theory of substantive law under which relief is sought.

Plaintiff could have, but did not, present these federal statutory and constitutional claims in the administrative and state court proceedings that addressed the same factual issues. Under Ohio Rev. Code § 5101.35, which applies to administrative actions relating to Medicaid, an individual may request a state hearing on an agency's determination and may make an administrative appeal of the state hearing decision. In those administrative appeals, the individual may assert grounds for relief under both "federal or state law[.]" Ohio Rev. Code § 5101.35(B); *see also Wymsylo v. Bartec, Inc.*, 132 Ohio St. 3d 167, 174 (recognizing that "an as-applied [constitutional] challenge depends upon a particular set of facts" and "must be raised before the administrative

agency to develop the necessary factual record"). If the individual disagrees with an administrative appeal decision, then she may further appeal to the state court of common pleas. Ohio Rev. Code § 5101.35(C), (E). On appeal to the state court, the individual may assert federal claims and constitutional challenges relating to the administrative decision. *Columbus Rehab. & Subacute Inst. v. Franklin Cnty. Dep't of Job & Family Servs.*, No. 2:08-cv-103, 2008 WL 5273924, at *5-6 (S.D. Ohio Dec. 17, 2008) (holding that individual may raise § 1983 claims and constitutional issues relating to state procedures for Medicaid eligibility determinations on appeal to state court); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 629 (1986) (recognizing that constitutional claims may be raised in state-court judicial review of administrative proceedings). This procedure has been found to provide a full and fair opportunity to raise federal claims and constitutional challenges. *Columbus Rehab. & Subacute Inst.*, 2008 WL 5273924, at *5-6. Plaintiff's citation to the administrative hearing procedure for her claims (Doc. 11, PageId 130-32) does not demonstrate that her claims could not have been asserted at the administrative level. Nor does Plaintiff provide any authority to show that the state court could not have adjudicated her federal or constitutional claims had she presented them on appeal.[15]

For these reasons, the Court finds that the claims asserted herein are barred by *res judicata*. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84-85 (1984) (finding that federal claims under § 1983 asserted after a state court judgment were barred by *res judicata* because they could have been raised in state court, and stating

---

[15] As this Court has recognized (albeit under the *Younger* abstention doctrine), the Ohio state court has a significant interest in adjudicating claims such as these that concern how the State of Ohio administers the Medicaid program, and more specifically, whether that Medicaid program is administered in accordance with applicable law. *Columbus Rehab. & Subacute Inst. v. Franklin Cnty. Dep't of Job & Family Servs.*, No. 2:08-cv-103, 2008 WL 5273924, at *4 (S.D. Ohio Dec. 17, 2008).

that "it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims"); *Krauss v. City of Reading*, 810 F. Supp. 212, 215 (S.D. Ohio 1992)  (barring constitutional claims based on *res judicata* where the Ohio Court of Common Pleas could have adjudicated those claims on appeal from the administrative agency).[16]

### D.  Plaintiff's § 1983 claims are not viable due to Graham's death.

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that:  1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and 2) the deprivation was caused by a person while acting under color of state law.  *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  Although § 1983 is not itself a source of any substantive rights, it provides a remedy for deprivations of rights elsewhere conferred.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  In the Sixth Circuit, a § 1983 action is "entirely personal to the direct victim of the constitutional tort."  *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000).  "[O]nly the purported victim, or his estate's representative, may prosecute a [S]ection 1983 claim."  *Id.*  Further, "[i]t is well established that Section 1983 provides no cause of action on behalf of a deceased person when the purported violation of his or her civil rights occurred after death." *Skipper v. Clark*, 150 F. Supp. 3d 820, 826 (W.D. Ky. 2015); *see also Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir. 1979) ("We find that the Civil Rights Act, 42 U.S.C. §§ 1983

---

[16]  The decision in *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23 (2000), also is instructive on asserting claims before an administrative agency.  In that case, the Court stated: "The fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency.  . . . And a court reviewing an agency determination . . . has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot decide[.]"  (internal citations omitted).

and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death. A 'deceased' is not a 'person' for the purposes of 42 U.S.C. §§ 1983 and 1985, nor for the constitutional rights which the Civil Rights Act serves to protect."); *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979) ("After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived."); *Estate of Conner by Conner v. Ambrose*, 990 F. Supp. 606, 618 (N.D. Ind. 1997) ("It is clear that § 1983 does not provide a cause of action on behalf of a deceased based upon alleged violations of the deceased's civil rights which occurred after his death."); *Love v. Bolinger*, 927 F. Supp. 1131, 1136 (S.D. Ind. 1996) (following *Whitehurst*). When a civil rights claim accrues prior to an individual's death, however, the survival of a § 1983 claim is determined by state law if it would not be "inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 588-90 (1978) (citing 42 U.S.C. § 1988(a)).

Although there is authority that arguably could support Plaintiff's contention that § 1983 claims pertaining to an individual's eligibility for state-provided Medicaid benefits that accrue prior to death could constitute a property interest in Ohio that survives death,[17] Plaintiff's § 1983 claims nonetheless must be dismissed on two separate grounds. First, Plaintiff is not the proper party to pursue the claims on Graham's behalf. Graham is the purported victim. Graham, however, is deceased and cannot legally

---

[17] *See Price v. Medicaid Dir.*, 310 F.R.D. 345, 359–60 (S.D. Ohio 2015) (holding that plaintiffs have a property interest in state-provided Medicaid benefits for which they hope to qualify and that a claim for property interest would survive under Ohio's survivorship statute, Ohio Rev. Code § 2305.21), *rev'd and remanded on other grounds*, 838 F.3d 739 (6th Cir. 2016). *But see Bernard v. Kan. Health Policy Auth.*, No. 09-1247, 2012 WL 941674 (D. Kan. Mar. 20, 2012) (holding under Kansas survival statute, which is similar to Ohio's survival statute, that § 1983 claims based on the denial of Medicaid eligibility did not survive death).

assert her own claims in this Court. Her claims therefore must be asserted through her estate's representative. As Plaintiff is not the estate's representative, it has no legal authority to assert these claims on Graham's behalf.[18]

Second, even if Plaintiff could legally assert these claims on Graham's behalf, the alleged violations of Graham's rights occurred after her death. Plaintiff's § 1983 claims are premised on various violations stemming from the determination that Graham was ineligible for Medicaid benefits. (Doc. 3, PageId 26-27, 31, 33-34). The earliest an alleged violation could have occurred is on April 22, 2014 when Graham initially was found ineligible for Medicaid benefits. (Doc. 3, PageId 23, 31). This date is more than two months after Graham's death. (*Id.*). To the extent Plaintiff alleges ongoing violations by Defendants (Doc. 3, PageId 31, 33), those violations also must have occurred after Graham's death. As a deceased person has no civil rights that may be violated, Plaintiff cannot maintain the § 1983 claims against Defendants that are based entirely on actions occurring after Graham's death.

For these reasons, Plaintiff's § 1983 claims against Defendants must be dismissed.

### E. Plaintiff's claims under the ADA, Rehabilitation Act, and § 1983 are barred by the two-year statute of limitations.

It is undisputed that the ADA, Rehabilitation Act, and § 1983 claims are governed by a two-year statute of limitations. *McCormick v. Miami Univ.*, 693 F.3d 654, 662-64 (6th Cir. 2012) (ADA and Rehabilitation Act claims); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991) (§ 1983 claims).

---

[18] Even if Plaintiff could somehow inherit these personal claims of Graham after her death, Plaintiff's authorized representation terminated before this lawsuit was filed when Graham received a final eligibility determination that denied her Medicaid application.

Federal law governs the question of when the limitations period begins to run. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). The general rule is that the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his action. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). A plaintiff has reason to know of her injury when she should have discovered it through the exercise of reasonable diligence. *Id.; Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). The test is an objective one under which the Court determines "'what event should have alerted the typical lay person to protect his or her rights.'" *Sharpe*, 319 F.3d at 266 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

Here, Graham's eligibility for Medicaid benefits originally was denied on April 22, 2014. (Doc. 3, PageId 23). At that time, Plaintiff should have been alerted to the need to protect both the federal and state rights of Graham with respect to that denial.[19] The limitations period for Graham's ADA, Rehabilitation Act, and § 1983 claims therefore expired on April 22, 2016. As Plaintiff did not file this lawsuit until January 13, 2017, her claims are time barred.[20]

Plaintiff's attempt to avoid the statute-of-limitations bar by asserting a "continuing violation" lacks merit. Mere adherence to an original decision is not enough to establish a continuing violation. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999) (holding that ODOT's adherence to its decision on a parkway project was not a continuing course of conduct that would support a continuing violation theory). A

---

[19] As discussed previously, Ohio's administrative procedures permit appeals of the agency's decision based on both federal and state law grounds. Ohio Rev. Code § 5101.35(B).

[20] Even if the Court were to use the November 19, 2014 date of the final administrative decision denying Graham's eligibility for Medicaid benefits as the accrual date, the statute of limitations still would have run approximately two months before Plaintiff filed this action. *See* (Doc. 10, PageId 105); Ohio Rev. Code § 5101.35 (indicating that the "administrative appeal decision is the final decision of the department and . . . is binding upon the department and agency").

continuing violation exists only when there are "continued unlawful acts" rather than "continued ill effects from the original violation." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010), *cert. denied*, 562 U.S. 1095 (2010); *Dixon v. Clem*, 492 F.3d 665, 672 (6th Cir. 2007). Plaintiff has not identified any distinct unlawful act of Defendants upon which the alleged continuing violation is based. (Doc. 11, PageId 138). Instead, Plaintiff claims that every day Defendants adhere to the April 22, 2014 decision to deny Medicaid benefits to Graham, they violate her constitutional and federal statutory rights. In particular, Plaintiff states that there is a "continuing pattern of discrimination and violations of the Federal Medicaid Act, which continue to this day"; that "Defendants' acts of counting the life insurance policy as a resource of Plaintiff, for which she was entirely unable to access, had and continues to have the effect of denying her the medical care for which Defendants are mandated to provide to eligible persons"; that Defendants continue to be in violation of the Federal Medicaid Act by failing to provide services to Plaintiff with "reasonable promptness"; and that its continued failure to afford her Medicaid benefits constitutes discrimination. (Doc. 11, PageId 136-38).[21] This argument plainly reflects that Plaintiff's continuing violation theory is based on "continuing ill effects" from the original eligibility decision rather than on any continuing unlawful acts of Defendants. Indeed, the denial of Medicaid benefits to Graham was a discrete event after which the injury from the denial was complete. This is underscored by the fact that Graham was deceased at the time of denial, which meant that the amount of past benefits to which she could be entitled had already accrued. To allow Defendants' continued adherence

---

[21] The allegations in her Amended Complaint are in accord. (Doc. 3, PageId 31) (alleging "repeated" acts and "repeated, ongoing failure").

to its decision to constitute a continuing violation would effectively eliminate any time bar on actions arising from the denial of Medicaid benefits because a new violation would occur every day that the denial stays in place.

As for Plaintiff's argument that the statute of limitations should be tolled as a result of Graham being of "unsound mind," the Court finds that Ohio's tolling statute is inapplicable in this case. Under Ohio Rev. Code § 2305.16, if a person entitled to bring actions set forth in certain sections of the Ohio Revised Code is "at the time the cause of action accrues, . . . of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed." As discussed above, none of Graham's claims could have accrued until April 22, 2014. That accrual date is more than two months after Graham's death. Graham therefore could not have been of "unsound mind" as contemplated by the tolling statute at the time or at any time after her claims accrued because any disability she could have asserted terminated at the time of her death. *See Fetterolf v. Hoffmann-LaRoche, Inc.*, 104 Ohio App. 3d 272, 280 (Ohio App. Ct. 1995) (disability of a minor removed at death and the statute of limitations began to run).

Accordingly, the Court finds that Plaintiff's ADA, Rehabilitation Act, and § 1983 claims are barred by the statute of limitations.

### F. Dismissal of Plaintiff's requests for declaratory relief based on Eleventh Amendment immunity is not appropriate.

Generally, the Eleventh Amendment to the United States Constitution bars suit against a State or its agencies or departments in federal court regardless of the nature of the relief sought. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996); *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 100 (1984). There are exceptions to

Eleventh Amendment immunity, however. *Carten v. Kent State University*, 282 F.3d 391, 397 (6th Cir. 2002). An exception to Eleventh Amendment immunity applies where a plaintiff seeks prospective relief to compel state officials to comply with federal law. *See Ex parte Young*, 209 U.S. 123 (1908); *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 508 (6th Cir. 2008). When this exception applies, a "court may enter a prospective injunction that costs the state money, but only if the monetary impact is ancillary, *i.e.*, not the primary purpose of the suit." *Barton v. Summers*, 293 F.3d 944, 950 (6th Cir. 2002) (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). An injunction ordering retroactive benefits for past violations of federal law is prohibited by the Eleventh Amendment. *Edelman,* 415 U.S. at 666-69.

A second exception applies to claims for which the Eleventh Amendment immunity of the State has been waived or validly abrogated by Congress. *Carten*, 282 F.3d at 397; *Robinson v. Univ. of Akron Sch. of Law*, 307 F.3d 409, 413 (6th Cir. 2002); *Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 627-28 (6th Cir. 2001).

In the Amended Complaint, Plaintiff requests that the Court:

1. Issue a Declaratory Judgment in favor of Plaintiff, requiring Defendants to adhere to the requirements of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

2. Declare unlawful the Defendants' failure to arrange for medical assistance and nursing facility services to Plaintiff;

 (Doc. 3, PageId 34). Plaintiff further requests an order "requiring the Defendants to automatically issue payment of Plaintiff's Medicaid benefits." (*Id.*, PageId 34).

Placed in the full context of this case, Plaintiff's requests can reasonably be characterized only as requests for retroactive relief disguised in prospective terminology. Graham died almost three years prior to the filing of this lawsuit. Any

future adherence to federal laws by Defendants with respect to Graham provides no actual relief to her. What Plaintiff actually is requesting is that the Court find Defendants violated the ADA, Rehabilitation Act, and Medicaid Act in the past and to overturn Defendants' past decision to deny Graham Medicaid benefits. Plaintiff's request for relief in the form of payments of the Medicaid benefits to which Graham may have been entitled in the past also makes clear that Plaintiff is requesting retroactive relief in this case.[22]

Generally, a court may not order state officials to pay out public benefits wrongly withheld in the past such that the requested retroactive relief would be barred by the Eleventh Amendment. However, Plaintiff also raises at least one claim for which Eleventh Amendment immunity may have been waived or abrogated, which potentially could allow some portions of that retroactive relief to avoid the Eleventh Amendment bar. *Carten v. Kent State University*, 282 F.3d 391, 397 (6th Cir. 2002) (recognizing that Ohio has waived Eleventh Amendment immunity for Rehabilitation Act claims and indicating that state immunity may have been abrogated for claims under Title II of the ADA based on denial of due process only). As neither party has addressed this issue, the Court declines to conclude that all of the retroactive relief requested by Plaintiff is barred by the Eleventh Amendment.[23]

---

[22] These requests are distinguishable from the prospective requests in *Pierce v. Medicaid Director*, 838 F.3d 739, 747 (6th Cir. 2016). There, the plaintiffs sought a prospective injunction that provided benefit recipients with notice of how the benefits would be awarded going forward and of the beneficiaries' right to pursue state administrative benefits in accordance with that injunction. Here, Plaintiff is not requesting notice of how the benefits will be awarded going forward or of how to pursue state administrative benefits in the future; it is requesting a determination of wrongful withholding of benefits in the past and is seeking a direct award of past public benefits to which it claims Graham was entitled.

[23] Nonetheless, the Court concludes that all claims asserted and relief requested by Plaintiff, whether construed to be prospective or retroactive in nature, must be dismissed on the other grounds discussed herein.

**G. Plaintiff's claims against ODJFS are not subject to dismissal based on Ohio Rev. Code § 5162.03.**

In the Amended Complaint, Plaintiff alleges that Defendant Dungey is the Director of ODJFS, "which is the state agency which processed Ms. [Graham's] Medicaid application." (Doc. 3, PageId 22). It further alleges that Defendant Dungey "acted under color of state law in administering the regulations, customs, policies, and practices material herein." (*Id.*). Defendant Dungey is sued in her official capacity only. (*Id.*).

Defendants argue that the claims against Director Dungey in her official capacity as ODJFS's Director must be dismissed because ODM became the sole administrator of the Medicaid program in 2013. (Doc. 10, PageId 69). Defendants contend that ODM has given ODJFS the authority to adjudicate disputes regarding Medicaid eligibility but not the authority to make initial determinations of Medicaid eligibility, which is what is at issue in this lawsuit. (*Id.*). Plaintiff responds that it "has no objection to dismissing Defendant Dungey if warranted under the circumstances" but that "initial discovery relevant to the Ohio agency responsible for administering the Medicaid program during the relevant time periods is warranted." (Doc. 11, PageId 134). Defendants reply that discovery is not helpful or relevant because ODM became the sole administrator of the Ohio Medicaid program as a matter of law in 2013. (Doc. 14, PageId 171).

As of September 29, 2013, Ohio law provides that "the department of medicaid shall act as the single state agency to supervise the administration of the medicaid program." Ohio Rev. Code § 5162.03. This provision does not indicate that no other agency may be involved in the administration of the program; instead, it identifies the ODM as the supervisor overseeing the administration of the program. While

29

Defendants point the Court to Ohio Rev. Code § 5160.31, that provision indicates only that the ODM may contract with the ODJFS to hear appeals of Medicaid eligibility decisions, as it did in this case.  It does not foreclose the possibility that ODJFS may have been involved in the initial eligibility determination for Graham.  In fact, the state hearing decision pertinent to this case indicates that the issue on appeal was "whether the Warren County Department of Job and Family Services (Agency) correctly denied" Graham's February 3, 2014 Medicaid application.  (Doc. 10, PageId 97).  This language is sufficient to warrant further discovery on ODJFS's involvement in the initial eligibility decision made on Graham's application.

Therefore, having considered the foregoing favorably to Plaintiff, the Court finds that the claims against ODJFS cannot be dismissed as a matter of law under Ohio Rev. Code § 5162.03.[24]

IV.    **Conclusion**

Consistent with the foregoing, **IT IS ORDERED** that Defendants' Motion to Dismiss the Amended Complaint (Doc. 10) is **GRANTED**, and this case shall be terminated on the docket of this Court.

s/ Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

[24] However, these claims must be dismissed on the other grounds discussed herein.